UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S OPPOSITION TO |
| v. | ) | DEFENDANT'S MOTION TO |
| | ) | VACATE, SET ASIDE, OR CORRECT |
| 1. DEREK MICHAEL CHAUVIN, | ) | SENTENCE UNDER 28 U.S.C. § 2255 |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by and through its undersigned attorneys, and respectfully submits this opposition to Defendant Derek Michael Chauvin's Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255.  ECF No. 544.  On December 15, 2021, Defendant pleaded guilty to violating 18 U.S.C. § 242 and "waive[d] the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel."  ECF No. 142, Plea Agreement, at ¶ 16.  Defendant's instant claims of ineffective assistance fail on their merits, and the files and records of this case— including the exhibits cited by Defendant in his motion—conclusively show that Defendant is not entitled to relief.  The government respectfully requests that this Court deny the motion without hearing.

I.   **Background**

In May 2021, a federal grand jury returned an indictment charging Defendant, a former police officer at the Minneapolis Police Department ("MPD"), with two violations

of 18 U.S.C. § 242.  ECF No. 1.  Count One charged Defendant Chauvin with acting under color of law to willfully deprive George Floyd of the right, secured by the United States Constitution, to be free from the unreasonable force of a police officer.  In particular, Count One charged that "Defendant Chauvin held his left knee across George Floyd's neck, and his right knee on Floyd's back and arm, as George Floyd lay on the ground, handcuffed and unresisting, and kept his knees on Floyd's neck and body even after Floyd became unresponsive.  This offense resulted in bodily injury to, and the death of George Floyd." ECF No. 1 at 2.  Count Two charged the defendant and three other former MPD officers with acting under color of law to willfully deprive George Floyd of the right, secured by the United States Constitution, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs.

On December 15, 2021, Defendant pleaded guilty to Count One of the Indictment. ECF No. 142.[1]  In the plea agreement, Defendant agreed that the following facts are true and establish his guilt beyond a reasonable doubt:

> On the evening of May 25, 2020, the defendant and his partner, Officer Thao, responded to a dispatch call regarding a counterfeit bill. Officers Kueng and Lane were already on scene. After an attempt to seat Mr. Floyd in a squad car, the defendant and Officers Kueng and Lane maneuvered Mr. Floyd, who was handcuffed and requesting to be placed on the ground, out of the vehicle and face-down on the street. Mr. Floyd remained restrained, prone and handcuffed on the ground for approximately ten minutes. During this entire period, the

---

[1] Defendant also pleaded guilty to Count One of an Information that charged him with violating 18 U.S.C. § 242 by striking a juvenile in the head multiple times with a police-issue flashlight and holding his knee on the juvenile's neck, shoulders, and upper back for between fifteen and sixteen minutes without legal justification.  ECF No. 142 at 1, 6-7 (Case No. 21-cr-109).

> defendant held his left knee on Mr. Floyd's neck, back, and shoulder area and his right knee on Mr. Floyd's left arm and upper back.
>
> . . .
>
> After the initial restraint, Mr. Floyd stopped resisting officers. The defendant admits that no later than the time the officers decided not to apply the hobble to Mr. Floyd, the defendant's continued use of force became objectively unreasonable and excessive based on a totality of the circumstances. After that point, the defendant continued his unreasonable restraint of Mr. Floyd until after the paramedics arrived.
>
> The defendant admits that in using this unreasonable and excessive force, he acted willfully and in callous and wanton disregard of the consequences to Mr. Floyd's life. The defendant knew that what he was doing was wrong, in part, because it was contrary to his training as an MPD officer. The defendant chose to continue his use of force even though he knew from MPD policy and training that once Mr. Floyd was compliant, the defendant should have gotten off of him and moved him into a side recovery or seated position. The defendant also knew there was no legal justification to continue his use of force because he was aware that Mr. Floyd not only stopped resisting, but also stopped talking, stopped moving, stopped breathing, and lost consciousness and a pulse. The defendant chose to continue applying force even though he knew Mr. Floyd's condition progressively worsened.
>
> . . .
>
> The defendant agrees that the appropriate base offense level is second-degree murder because he used unreasonable and excessive force that resulted in Mr. Floyd's death, and he acted willfully and in callous and wanton disregard of the consequences to Mr. Floyd's life. The defendant admits that his willful use of unreasonable force resulted in Mr. Floyd's bodily injury and death because his actions impaired Mr. Floyd's ability to obtain and maintain sufficient oxygen to sustain Mr. Floyd's life.

ECF No. 142 at 2-5. Defendant signed that he knowingly, willingly, and voluntarily waived his right to go to trial. *Id.* at ¶ 5. Defendant waived his right to appeal any non-jurisdictional issues, including "the constitutionality of the statutes to which the defendant is pleading guilty, and the applicability of those statutes to his actions." *Id.* at ¶ 16. Defendant "also waive[d] the right to petition under 28 U.S.C. § 2255 except based upon

a claim of ineffective assistance of counsel." *Id.* Defendant stipulated that his advisory guideline range is life imprisonment, *id.* ¶ 8.e., and the parties agreed to recommend a sentence of imprisonment of no less than 240 months and no greater than 300 months, to be served concurrent to the 270-month sentence imposed in *State of Minnesota v. Derek Chauvin*, No. 27-cr-20 12646, *id.* ¶ 10.

At Defendant's change-of-plea hearing on December 15, 2021, the Court asked the government to orally review the terms of the plea agreement, including Defendant's waivers of appeal and collateral attack. ECF No. 319 at 12-13. The Court confirmed with Defendant that Defendant was knowingly waiving his right to go to trial. *Id.* at 18-20. The Court asked Defendant, "You further understand that as to anything involving the guilt phase, there is unequivocally no right to appeal anything to a higher court; do you understand that?" Defendant responded, "Yes." *Id.* at 20. The Court also advised Defendant, "This is the end of it. You also understand that there is only a very, very slight right to appeal and, quite honestly, I don't know how you would get it, but there is a slight right to appeal that could have to do with this sentencing guideline business and if I make a mistake in the guidelines or something, a sentence above the guidelines, out of reason, something like that, you might have a right to appeal, but it's an extremely limited right. Do you understand that?" Defendant responded, "Yes." *Id.* at 20-21. Finally, Defendant agreed that all of the facts stated in the plea agreement were true. *Id.* at 27.

On July 7, 2022, the Court sentenced Defendant to 252 months' imprisonment, to run concurrently with his imprisonment in *State of Minnesota v. Derek Chauvin*, No. 27-cr-20-12646. ECF. No. 391. The Court adjusted the term of imprisonment to 245 months

to account for Defendant's discharged time already served in the state case, and it noted that restitution was to be determined.  *Id*.  On May 9, 2023, the Court entered an amended sentencing judgment, sentencing Defendant to 240 months' imprisonment and no restitution.  ECF. No. 529.

On July 31, 2023, Defendant entered a pro se notice of appeal to the Court's amended sentencing judgment (which ordered that the Defendant would not be required to pay restitution), arguing that defense counsel failed to notify him of the amended judgment and that, had he known of it, he would have directed defense counsel to appeal it.  ECF No. 530.  The United States Court of Appeals for the Eighth Circuit dismissed Defendant's appeal as untimely on August 14, 2023.  Defense counsel moved to withdraw as attorney, ECF No. 541, and the Court granted the motion on September 6, 2023, ECF No. 541.

Defendant filed the instant pro se motion to vacate his conviction and sentence under 28 U.S.C. § 2255 on November 13, 2023.  ECF No. 544.  The Court ordered the government to respond by January 12, 2024.  For the below reasons, Defendant's motion should be denied.

II.   <u>Argument</u>

### A. Ground One: Claim of Ineffective Assistance (Alleged Failure to Provide Copies of Documents and to Notify Defendant of Doctors' Opinions)

Defendant first argues that defense counsel's ineffective assistance negated the knowing and voluntary nature of his guilty plea.  ECF No. 544 at 2-3.  According to Defendant, defense counsel failed to provide him with copies of Mr. Floyd's autopsy and toxicology reports and MPD's use of force policy and failed to notify him of the opinion

of two doctors (Dr. William Schaetzel and Dr. Paul Haney) who wrote to Defendant and opined that Defendant did not cause Mr. Floyd's death. Defendant argues that, had defense counsel taken these actions, Defendant would have insisted on going to trial. *Id.* at 3-4.

Defendant's first argument fails because he has failed to show either that counsel's performance was deficient or that he suffered prejudice. "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only [1] that counsel's performance was deficient but also [2] that such deficient performance prejudiced his defense." *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

A defendant must first show that his counsel's performance was so deficient that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Because "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," counsel's acts or omissions must fall "outside the wide range of professionally competent assistance" in order to qualify as deficient. *Id.* at 690.

Additionally, a defendant must show that counsel's deficient performance actually prejudiced his defense. *Id.* at 687. To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This inquiry requires the court to determine "whether counsel's deficient performance render[ed] . . . the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In the context of

a guilty plea, to satisfy the *Strickland* prejudice prong, a Defendant must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (internal quotation marks omitted). Where the alleged error is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry focuses on whether discovery of the evidence "would have led counsel to change his recommendation as to the plea," which depends "in large part" on whether the evidence "likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Because a defendant must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive. *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Here, Defendant has failed to show *either* that counsel's performance was deficient or that he suffered prejudice. As to the medical reports, Defendant does not allege that he lacked awareness of Mr. Floyd's autopsy and toxicology results before agreeing that "his actions impaired Mr. Floyd's ability to obtain and maintain sufficient oxygen to sustain Mr. Floyd's life." ECF No. 142, Plea Agreement, at 2-5. Nor could he, as these results came out at his state trial, *State of Minnesota v. Derek Chauvin*, No. 27-cr-20-12646. Instead, Defendant argues that defense counsel "never . . . provided [Defendant] a copy of the Autopsy and Toxicology Report." ECF No.544 at 2. However, defense counsel was

7

not permitted to provide Defendant with his own copies of these documents, as doing so would have violated this Court's protective order and subjected counsel to possible sanctions. *See* ECF No. 60, Protective Order Governing Discovery, at ¶ 3 ("'Protected Material' means any discovery materials, including medical and autopsy reports"); ¶ 7 ("Protected Material shall not be given to any Defendant in this case for him to retain"); *see also* Fed. R. Crim. P. 16(d)(2) (setting forth penalties for violation of a protective order). Even if counsel had been permitted to provide Defendant with copies of Mr. Floyd's autopsy and toxicology results pre-guilty plea, Defendant has failed to show that there is any reasonable probability that his having possession of documents, the content of which he was already aware, would have resulted in a different outcome of the proceeding. *See* 466 U.S. at 687.

Likewise, as to the MPD use of force policy, Defendant does not argue that he was unaware of his own department's policies, but rather that "[p]rior to late-July 2023, [defense counsel] never provided defendant with a copy of" MPD use of force policies on conscious neck restraints and maximal restraint techniques, which Defendant argues he properly applied. ECF No. 544 at 2. Defendant has failed to show that defense counsel's failure to provide him with a copy of the policies of Defendant's own department constituted deficient performance. As an 18-year MPD veteran, Defendant did not need a copy of MPD's policies to understand them; as he admitted, "[t]hrough his experience . . . [he] was familiar with MPD policies and training regarding authorized use of force, including the requirement that an officer use force only in proportion to a subject's

resistance and the requirement that an officer stop using force when a subject is not resisting." ECF No. 142, Plea Agreement, at 2-3.

Additionally, Defendant has failed to show that there is a reasonable probability that his possession of a copy of MPD policy would have resulted in a different outcome of the proceeding. The MPD policies cited by Defendant demonstrate Defendant's guilt. As Defendant admitted in the plea agreement: "[D]efendant knew from MPD policy and training that once Mr. Floyd was compliant, the defendant should have gotten off of him and moved him into a side recovery or seated position." ECF No. 142 at 4. The neck restraint policy cited by Defendant is clear: "Neck restraints shall not be used against subjects who are passively resisting." ECF No. 544-1 at 6 of 12. Defendant's argument that he was properly applying a conscious neck restraint is belied by his admission that he "kept his knees on Mr. Floyd's neck and body, even after Mr. Floyd became unresponsive," ECF No. 142 at 2, and even after he "was aware that Mr. Floyd . . . lost consciousness and a pulse," *Id.* at 4. Likewise, the maximal restraint technique (MRT) policy cited by Defendant undermines Defendant's argument that he was properly applying it: it involves the use two "hobble restraint device[s]," which were not used in this case; it provides that the technique "shall only be used in situations where handcuffed subjects are combative"; and it requires that "[a]s soon as reasonably possible, any person restrained using the MRT who is in the prone position . . . shall be placed in the side recovery position." ECF No. 544-1 at 7-8 of 12. Accordingly, Defendant has failed to show that there is a reasonable probability that his possession of a copy of MPD policy would have resulted in a different outcome of the proceeding. *See* 466 U.S. at 687.

Finally, as to the opinions of Dr. William Schaetzel and Dr. Paul Haney, Defendant has again failed to show that his counsel's performance was deficient. Citing his post-plea email exchanges with the doctors, Defendant argues that the doctors' opinions establish that Mr. Floyd's other health conditions—his "paraganglioma, sickling, and toxicology"—were "his actual cause of death," and that had counsel notified Defendant of those opinions, Defendant would not have pled guilty. ECF No. 544 at 3. Even assuming that (a) one or both doctors did in fact attempt to contact defense counsel prior to Defendant's guilty plea; (b) counsel was aware of the contact; and (c) counsel failed to notify Defendant of the contact, Defendant has failed to show that counsel's conduct was "outside the wide range of professionally competent assistance." 466 U.S. at 690.

The autopsy report cited by Defendant and listing Mr. Floyd's other health conditions supports Defendant's guilt. The report concludes that Mr. Floyd died from "cardiopulmonary arrest complicating law enforcement subdual, restraint, and neck compression." ECF No. 544-1 at 1 of 13. Dr. Baker, the doctor who performed the autopsy cited by Defendant and the other doctors, testified at the jury trial of the other MPD officers on scene and explained: "I top lined the law enforcement subdual restraint and neck compression because in my opinion those played a key role in precipitating Mr. Floyd's cardiopulmonary arrest." 21-cr-108, Trial Tr. Vol. III at 1391 lines 3-6. Dr. Baker testified that Mr. Floyd indeed had other health conditions listed in the autopsy report, and that he "consider[ed] those contributing causes because obviously his heart disease did not trigger the interaction with law enforcement officers. His drug use didn't trigger the interaction with the law enforcement officers. They played a role in his death, but they were not the -

10

- in my opinion the top line cause of his death." *Id.* at 1392 lines 1-6. Counsel's failure to pursue a line of inquiry centering on doctors who disagreed with the victim's autopsy report was not deficient performance. *See* 466 U.S. at 681 ("Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based.").

Likewise, Defendant has failed to show that counsel's alleged failure to notify him of the opinions of Drs. Schaetzel and Haney "render[ed] . . . the proceeding fundamentally unfair."[2]  506 U.S. at 372.  Defendant's argument to the contrary—and its logical implication, that Defendant is actually innocent—is defeated by *Burrage v. United States*, 571 U.S. 204, 211 (2014), wherein the Supreme Court made clear that death "results from" an act where the act is a "but-for" cause, even where the death has multiple but-for causes. As the *Burrage* Court explained, "[I]f poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." *Id.* at 211. Even assuming Drs. Schaetzel and Haney believed that Mr. Floyd's other health conditions caused his death, those opinions do not undermine—or address—the conclusion

---

[2] Indeed, the defense hired a doctor who provided expert medical testimony at Defendant's state trial that is very similar to what Defendant argues Drs. Schaetzel and Haney offer. *See State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 14, 2021 at p.33 lines 5-20 (testimony of defense expert Dr. David Fowler: "[I]n my opinion, Mr. Floyd had a sudden cardiac arrhythmia . . . due to his atherosclerotic and hypertensive heart disease . . . [with] significant contributory conditions [of] the toxicology, the fentanyl and methamphetamine . . . exposure to vehicle exhaust . . . and paraganglionoma[.]  So all of those combined to cause Mr. Floyd's death."  Defendant cannot show that counsel's performance was deficient—even assuming counsel had been contacted by Drs. Schaetzel and Haney—given that the proposed expert testimony was not persuasive to the jury in Defendant's state trial.

that "[Defendant's] actions impaired Mr. Floyd's ability to obtain and maintain sufficient oxygen to sustain Mr. Floyd's life," an independently sufficient but-for cause of death. ECF No. 142, Plea Agreement, at 6. Defendant's first ground of appeal fails.

### B. Ground Two: Claim of Ineffective Assistance (Constitutional Challenge)

Defendant next argues that defense counsel was ineffective in failing to challenge the constitutionality of 18 U.S.C. § 242. ECF No. 544 at 4-5. In particular, Defendant argues that "independent probable cause of Floyd's criminal activity precluded prosecuting defendant for an 'unreasonable seizure'; that he lacked fair warning that he could be criminally prosecuted for depriving a person of their right to be free from an unreasonable seizure; and that police officers must be afforded their "day in court in a civil proceeding before[]" being charged criminally.

Defendant has failed to show that counsel's performance was deficient or that he suffered prejudice. The claims Defendant argues that counsel failed to raise are baseless, and counsel cannot be ineffective for failing to raise baseless claims. *See* 466 U.S. at 689; *see also Sittner v. Bowersox*, 969 F.3d 846, 853 (8th Cir. 2020) ("Failure to raise a meritless objection cannot support a claim of ineffective assistance.").

First, because there is no independent-probable-cause exception to the analysis of a violation of a person's Fourth Amendment right to be free from unreasonable force, counsel's failure to raise this argument was not deficient and Defendant was not prejudiced. Citing *United States v. Blakeney*, 876 F.3d 1126 (8th Cir. 2017), Defendant argues that an officer may not be prosecuted for an unreasonable seizure where the officer had independent probable cause to believe that the person seized had been engaged in criminal

12

activity. ECF No. 544 at 4. *Blakeney* does not support this proposition. In *Blakeney*, the Eighth Circuit concluded that the evidence was sufficient to support the defendant's Section 242 conviction for illegal arrest. *Id.* at 1132-33. The court cited *United States v. Ramey*, 336 F.2d 512, 514 (4th Cir. 1964), which held that "[w]hen an officer, knowing a warrant to be illegal, groundless, or fictitious, willfully uses his authority, and/or such an instrument to arrest and incarcerate the accused, such action is a deprivation of the right of the arrested to liberty and a violation of 18 U.S.C. § 242."

Defendant argues that this citation shows that in the Eighth Circuit, "a defense of independent probable cause [can] only be defeated" where there is evidence of a false warrant. ECF No. 544 at 4. This argument is without support in the law. All claims that law enforcement officers used unreasonable force during an arrest or other "seizure" are evaluated under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In fact, the Supreme Court has squarely rejected the argument that, so long as probable cause supports an arrest, the Fourth Amendment is not violated by the manner in which the arrest was conducted. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985) ("A police officer may arrest a person if he has probable cause to believe that person committed a crime . . . . Petitioners and appellant argue that if this requirement is satisfied the Fourth Amendment has nothing to say about how that seizure is made. This submission ignores the many cases in which this Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted.").

In examining whether an officer's use of force renders a seizure unreasonable, the charge at issue in this case, the question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them at the time, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. at 388. Counsel was not ineffective, and Defendant was not prejudiced, by counsel's failure to raise Defendant's proposed legally unsupported claim.

Second, because Defendant had fair warning that he could be criminally prosecuted for depriving a person of their right to be free from an unreasonable seizure, counsel's failure to raise the argument that he lacked fair warning was not deficient and Defendant was not prejudiced. The standard for determining whether criminal defendants had "fair warning" that their conduct was unconstitutional is no more burdensome than the standard used for determining whether a civil defendant has a right to qualified immunity in a § 1983 or an action based on *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (allowing civil suits for constitutional violations against federal officers acting under color of law). Indeed, the Supreme Court emphasized in *United States v. Lanier* that requiring "something clearer than 'clearly established' [used to determine qualified immunity] would . . . call for something beyond 'fair warning.'" *United States v. Lanier*, 520 U.S. 259, 270-71 (1997). Criminal liability may be imposed under § 242 "for deprivation of a constitutional right if, but only if, in the light of pre-existing law the unlawfulness under the Constitution is apparent." *Id.* at 271 (internal quotation marks

14

omitted).   The unlawfulness of an unreasonable seizure is indeed apparent under pre-existing law. *See, e.g.*, *Graham*, 490 U.S. at 388; *see also Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) ("The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures.").  Counsel was not ineffective, and Defendant was not prejudiced, by counsel's failure to raise this baseless claim.

Last, Defendant's suggestion that police officers must be afforded their "day in court in a civil proceeding before[]" being charged criminally is without support in the law.  ECF No. 544 at 4.  Accordingly, counsel was not ineffective, and Defendant was not prejudiced, by counsel's failure to raise this frivolous claim.  Defendant's second ground of appeal also fails.

### C.  A Hearing Is Not Required for the Court to Deny Defendant's Motion and Decline to Issue a Certificate of Appealability.

Although courts must hold an evidentiary hearing where a Section 2255 motion has potential merit, it need not do so where the "files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) ("No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.").  As discussed above, the files and records of this case—including the exhibits cited by Defendant in his motion—conclusively show that Defendant is not entitled to relief, and a hearing is not necessary.

15

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the movant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This Court should deny Defendant's § 2255 motion and, further, decline to issue a certificate of appealability because Defendant presents no issues that are "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994).

### III.    Conclusion

For the above reasons, the government respectfully requests that Defendant's Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255 be denied.

Dated: January 12, 2024                     Respectfully submitted,

ANDREW M. LUGER                     KRISTEN M. CLARKE
United States Attorney                     Assistant Attorney General
                                            Civil Rights Division

*/s/ LeeAnn Bell*
BY:  LEEANN BELL                     */s/ Samantha Trepel*
Assistant U.S. Attorney                     BY:  SAMANTHA TREPEL
Attorney ID No. 0318224                     Special Litigation Counsel
                                            Attorney ID No. 992377 DC